IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Zekiya Knox,<br><br>  Plaintiff,<br><br>  v.<br><br>The United States of America; AMISUB of SC, INC., d/b/a Piedmont Medical Center; South Carolina Emergency Physicians; Jeffrey Warden, MD; Brian Fleet, PA; Piedmont General Surgery Associates, LLC; Alex Espinal, MD; Bret Garretson, MD; and Digestive Disease Associates,<br><br>  Defendants. | C/A No. 0:17-cv-36-CMC<br><br><br>Opinion and Order Denying<br>Motion for Summary Judgment of<br>Defendant United States<br>(ECF No. 56) |

This matter is before the court on Plaintiff's complaint alleging medical malpractice against medical care providers, including providers at a federally funded community health care center, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. ECF No. 1. Defendant United States of America ("United States") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, alleging the action is barred by the statute of limitations. ECF No. 56. Plaintiff filed a response in opposition on April 17, 2017. ECF No. 63. Defendant United States filed its response on April 24, 2017. ECF No. 65. For the reasons set forth below, the motion is denied.

**COMPLAINT ALLEGATIONS**

Plaintiff alleges injury after her abdominal pain, which she alleges was never properly treated, developed into "significant damage to her intestines and caused a life threatening infection," sepsis. ECF No. 45, Am. Compl. ¶ 37. Plaintiff originally presented to the Piedmont

Medical Center Emergency Room ("Piedmont ER") (operated by Defendant Amisub of S.C., Inc.) on September 13, 2013, complaining of persistent abdominal pain. *Id.* at ¶ 9. She was seen by Defendant Dr. Warden, who performed a physical examination, lab testing, ultrasound of the lower abdomen, and CT scan. *Id.* at ¶¶ 9-11. No surgical consult was ordered, and Plaintiff was discharged with narcotic pain killers and an instruction to follow up with a gastroenterologist. *Id.* at ¶ 14. On September 19, 2013, Plaintiff had an appointment with Defendant Dr. Garrison, a gastroenterologist, who scheduled and conducted a colonoscopy on September 25, 2013. *Id.* at ¶¶ 15-16. Defendant Garrison sent Plaintiff to a surgeon, Defendant Espinal, the same day as her colonoscopy. Defendant Espinal ordered a CT scan, the results of which Plaintiff alleges she was never informed. *Id.* at ¶ 18. On September 26, 2013, Plaintiff went to see April Logan, a physician's assistant, at North Central Family Medical Center ("NCFMC"), a federally funded community health care center in Rock Hill, South Carolina. Ms. Logan ordered an ultrasound and referral to urology. *Id.* at 19.

Plaintiff was next seen by Ms. Logan on January 14, 2014, for abdominal pain. *Id.* at ¶ 24. Ms. Logan referred Plaintiff back to Defendant Espinal, who saw Plaintiff in February 2014. Plaintiff was prescribed prednisone at that appointment. *Id.* at ¶ 26. On March 21, 2014, Plaintiff returned to NCFMC complaining of abdominal pain. *Id.* at ¶ 28. The physician she saw ordered another ultrasound, which "noted tubular structures and encouraged a CT scan." *Id.* at ¶¶ 29, 30. Plaintiff was to follow up at NCFMC on April 14 for her ultrasound results, but due to pain she returned to the Piedmont ER by ambulance that day. *Id.* at ¶ 31. Defendant Warden prescribed antibiotics for a urinary tract infection. *Id.* at ¶ 34. Defendant Fleet ordered an additional antibiotic after a culture on April 18, 2014. *Id.* at ¶ 36.

On May 4, 2014, Plaintiff returned to the Piedmont ER for continuing abdominal pain and had a CT scan. *Id.* at ¶ 37. She was diagnosed with "either an infected inflamed appendix or a flare up of IBD that was never properly discovered or treated." *Id.* Having been untreated for a period of time, these led to sepsis and ultimately the amputation of three limbs. *Id.* at ¶ 39.

## PROCEDURAL POSTURE

Defendant United States has filed its motion as one to dismiss or, in the alternative, for summary judgment, arguing Plaintiff filed her claim outside the two-year statute of limitations for FTCA actions. *See* 28 U.S.C. § 2401(b). Plaintiff's claim was filed with the appropriate agency on June 14, 2016, more than two years after the United States argues the statute accrued on May 4, 2014. As the court has considered documents attached to the motion and response that are not "integral to the complaint," it will consider this motion as one for summary judgment. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Federal Tort Claims Act waives the sovereign immunity of the United States for civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674.

## MEDICAL CHRONOLOGY

Various medical records were attached by the parties to the motion and responses. The records are from Plaintiff's hospitalization at Carolinas Medical Center ("CMC") and following treatment at NCFMC.

Admission to CMC

Plaintiff was admitted to CMC on May 6, 2014 as a transfer from Piedmont ER. ECF No. 65-1 at 1. On May 14, 2014, she was seen by an orthopedist who noted her history and diagnosis as "s/p SBO and perforation with peritonitis and sepsis requiring vasopressors and subsequent sever (sic) dry gangrene to bilateral feet and hands." *Id.* at 28. A May 16, 2014 vascular consultation noted Plaintiff

> is an unfortunate 19-year-old female who was transferred from an outside facility in septic shock and on 3 pressors. An ileocecectomy and ileostomy was performed in the outside facility however throughout that night she clinically deteriorated. An echocardiogram was performed at some point that showed she had an EF of less than 10%. She was then transferred here for further management. Since then she's had multiple abdominal surgeries. She remained in shock for several days. It was noticed at some point that she started to develop dry gangrene of her right fingers and toes. She recently has clinically improved to the point she is not on any pressors.

*Id.* at 23. An addendum stated Plaintiff was "too sick for any interventions. Her extermities (sic) are non viable and well beyond any recovery at this point. Care should be life over limb at this

4

point." *Id.* On May 17, 2014, a Surgery Attending Progress note stated Plaintiff was "progressing adequately." *Id.* at 21.

A progress note signed on May 21, 2014, notes she was "seen in follow up peritonitis and C diff colitis in setting of Crohn. Events of family meeting reviewed from this AM. Pt made aware of her clinical situation." *Id.* at 9. Under "Impression and Plan" are noted diagnoses of:

1. Polymicrobial sepsis and peritonitis with enterococcus, MRSA, Kleb, Citrobacter, Clostridium from bowel perforation s/p multiple washouts.
2. Question of right atrial thrombus with emboli to limbs vs vasoconstrictor ischemic . . .
3. C diff colitis. .
4. Renal insufficiency . . .
5. Limb gangrene . . .
6. Leukocytosis cont to improve.

*Id.* A nephrology progress note also dated May 21 noted under "Impression" Plaintiff had "Crohn's colitis s/p ileocecectomy and end ileostomy for small bowel perf at OSH on 5/5/2014," and noted she had sepsis with "MODS including stress induced cardiomyopathy, acute respiratory failure, vasodilatory shock, 4 limb ischemia, and non-oliguric AKI." The note ends "I think her AKI will continue to resolve." *Id.* at 12-13. A Surgery Red-Progress note the same day stated "18-year-old female admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs endocarditis.") *Id.* at 19. The same day, Plaintiff's discharge plan was discussed with her interdisciplinary team and family. The hospital note stated "Ortho explained anticipated amputation to all 4 extremities at various levels. Pt. asked appropriate questions. Timing of surgery is not yet determined." *Id.* at 29.

A pediatric PM&R consult on May 23 stated Plaintiff's history as follows:

Per report episode of pain began 5/2/14 Friday with nausea vomiting while under treatment for UTI. Patient arrived at Piedmont Medical Center (PMC) 5/4/14 with acute lower abdominal pain in setting of 2 year history of chronic abdominal pain and Crohn's disease. This admitted to ICU at PCM with hypotension, tachycardia,

5

> elevated lacate, presumed sepsis. Abdominal CT at PMC showed SBO with inflammation of the ileum. Acutely worsened that afternoon . . .taken emergently to operating room for ex-lap and findings included dilated ileum, fistula to the right pelvis and between loops of small bowel, plus bowel perforation.

*Id.* at 30. Surgeries are noted (in addition to the initial laparoscopy, ileocecectomy, and end ileostomy on May 5) on May 6, May 7, May 9, May 11, May 13, and May 17, mostly for reopening laparotomy and multiple abdominal washouts. The note also stated Plaintiff had "2 year history of chronic abdominal pain. CT concerning for IBD. Limited follow up. Seen in ED 3/14/14 for acute lower abdominal pain." *Id.* at 31.

Plaintiff was discharged from CMC on June 6, 2014. Listed as discharge diagnoses were sepsis, likely intraabdominal source; small bowel obstruction with perforation at OSH; acute postoperative renal insufficiency; lactic acidosis; tachycardia; cardiomyopathy; limb threatening ischemia; cephalic thrombus; respiratory failure/ARDS; acute kidney injury secondary to shock/hypoperfusion with ATN and rhabdomyolysis; thrombocytopenia; C-diff; polymicrobia surgery culture; gram negative rod positive blood culture; hyperkalemia; shock liver; TF intolerance; RA thrombus; debility; and foot drop. *Id.* at 1. Secondary discharge diagnosis was "possible hx of inflammatory bowel disease." *Id.* It appears she was discharged to "acute rehab" to return for amputations when determined by orthopedic team. *Id.* at 8.

The amputations were done at CMC on July 29, 2014. ECF No. 63-2 at 1-3. A Surgical Pathology Report noted amputations of the right upper extremity above the elbow, left leg above the knee, right leg above the knee, and multiple left fingers. *Id.*

Post hospitalization treatment at NCFMC

Plaintiff was seen at NCFMC on November 26, 2014 for a hospital follow up. The note states she was "discharged on 10/28/14. . .she was in Rehab for three months." ECF No. 63-1 at

15. She obtained a refill for her medication. *Id.* On January 15, 2015, she was seen "for Hand amputee" and for referrals for rehabilitation and pain management. *Id.* at 12. Plaintiff's next file note was on March 9, 2015, which indicates her mother was in attendance to consult on FMLA issues and paperwork, which was completed. *Id.* at 10. On April 17, 2015, Plaintiff was seen for "oozing from her left hand thumb and index finger tips since her surgery in December[1]." *Id.* at 7. She was given medication. On September 3, 2015, she presented for evaluation for dietary supplements, as her ileostomy was to be reversed. *Id.* at 4. The last visit in the provided medical records was on January 11, 2016 for "paperwork for prosthesis," which was completed. *Id.* at 1.

## DISCUSSION

Defendant United States argues Plaintiff's claim is barred by the statute of limitations because her administrative claim was received by the appropriate agency on June 14, 2016, more than two years after it argues the statute of limitations accrued – when she was admitted to the hospital for sepsis on May 4, 2014. ECF No. 56-1. Plaintiff argues the statute of limitations did not begin to run on May 4, 2014, as she was not on notice of her injury as of that date, and further the date "precedes occurrence of the injury for which [Plaintiff] seeks compensation" – the amputation of her limbs. ECF No. 63. Therefore, Plaintiff contends, the statute of limitations could not have accrued until after the amputations took place on July 29, 2014. *Id.*

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . . . ." 28 U.S.C. § 2401(b). A claim accrues when the plaintiff knows, or in the exercise of due diligence should have known, of both the existence and the cause of the injury. *United States v. Kubrick*,

---

[1] There were no medical records available to the court regarding this December surgery.

444 U.S. 111, 123 (1979); *Gould v. U.S. Dept. of Health and Human Svcs.*, 905 F.2d 738, 742 (4th Cir. 1990). However, accrual of the claim does not "await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick*, 444 U.S. at 123. The Fourth Circuit has defined "cause" for purposes of the FTCA, holding a plaintiff need not know "the precise medical cause" of the injury. *Kerstetter v. United States*, 57 F.3d 362, 364-65 (4th Cir. 1995); *see also Hahn v. United States*, 313 F. App'x 582, 585 (4th Cir. 2008) ("A claim will accrue even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury.").

The court disagrees Plaintiff "knew or should have known" of her injury and its cause when she presented to Piedmont ER on May 4, 2014. The medical records show Plaintiff's physicians did not arrive at a diagnosis for her stomach pain or the cause of her sepsis until well after she was admitted and transferred from Piedmont to another hospital, CMC. *See* ECF No. 65-1 at 19 (May 21, 2014 surgical progress note stating Plaintiff was "admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs. endocarditis)); versus *id.* at 1 (June 6 discharge summary not mentioning Crohn's disease as a diagnosis but noting a "possible hx of inflammatory bowel disease" and "sepsis, likely intraabdominal source"). Medical records note Plaintiff was informed by hospital physicians of her condition and pending amputations on May 21, 2014. ECF No. 65-1 at 29. However, although Plaintiff knew she had sepsis and faced amputations at that point, it appears neither she nor her doctors were aware of the cause of her injury – whether and at what point the failure to diagnose her previous stomach pain resulted in her bowel perforation and subsequent sepsis. Therefore, the statute of limitations did not accrue in May 2014.

Plaintiff's argument the statute of limitation accrues only after her amputations also fails, as Plaintiff need not await full knowledge of the extent of her injuries before filing suit. *Bohrer v.*

8

*City Hosp., Inc.*, 681 F.Supp.2d 657, 665 (N.D.W.V. 2010) ("To be aware of an injury, a plaintiff need not know the full extent of his or her injury. The limitations period will run even though the ultimate damage is unknown or unpredictable."). Therefore, the court disagrees with Plaintiff's argument the statute of limitations necessarily accrued on the date of Plaintiff's amputations in July 2014. The amputations are important to the statute of limitations analysis, but not because they mark its accrual. Rather, the amputations show Plaintiff was severely incapacitated during her hospitalizations and rehabilitations and unlikely able to pursue investigating her claim at that point, as explained further below.

When Plaintiff knew or should have known the cause of her injury is unclear from the record. From the medical records submitted, the court is unable to determine the full sequence and duration of hospitalizations, including her admissions for amputations and subsequent rehabilitation. The records do, however, indicate that her treating doctors at CMC had failed to agree on the cause of her bowel perforation and sepsis. ECF No. 65-1 at 19 (May 21, 2014 surgical progress note stating Plaintiff was "admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs. endocarditis)); versus *id.* at 1 (June 6 discharge summary not mentioning Crohn's disease as a diagnosis but noting a "possible hx of inflammatory bowel disease" and "sepsis, likely intraabdominal source"). Given this uncertainty it is not surprising that there is nothing in the record to show if or when Plaintiff was advised or became aware her bowel perforation, sepsis, and amputations were caused by NCFMC's alleged missed diagnosis. Therefore, the court is unable to determine whether Plaintiff had actual knowledge of the cause of her injury more than two years prior to filing her FTCA administrative claim on June 14, 2016.

"[O]nce the claimant is in possession of the critical facts that he has been hurt and who has inflicted the injury, the claimant has a duty to make diligent inquiry into whether the injury resulted

9

from a negligent act." *Hahn*, 313 F. App'x at 585 (citing *Kubrick*, 444 U.S. at 122); *Doe v. United States*, 280 F.Supp.2d 459, 464 (M.D.N.C. 2003) (citing *Kubrick*, 444 U.S. at 122-24) ("A plaintiff possesses this knowledge [existence and cause of his injury] when he becomes aware of the critical facts that he has been hurt and who has inflicted the injury. A plaintiff armed with these critical facts must investigate to determine if the injury resulted from negligent conduct.").

The court is unable to determine at what point Plaintiff had constructive knowledge, or should have known, of the cause of her injury. The medical records show Plaintiff was incapacitated through 2014 during her stays in the hospital and rehabilitation facilities for her abdominal surgeries and amputations. There is no evidence in the limited record before the court that she should have known the "critical fact" of the alleged cause of her injury – the failure of NCFMC to diagnose her abdominal pain – or was able to investigate NCFMC's potential negligent conduct. *See Hahn*, 313 F. App'x at 585 (holding claim accrued "at the time that Hahn began consulting with other doctors upon his discharge from the hospital.").

Because the record does not show when Plaintiff was or should have been aware her prior medical treatment at NCFMC may have caused her injury, the motion of the United States for summary judgment based on statute of limitations is denied.

a. *Continuous Treatment Doctrine*

Plaintiff also contends the statute of limitations did not accrue in May of 2014 based on the continuous treatment doctrine, because she was still receiving treatment at NCFMC "for the same condition she now alleges NCFMC failed to properly diagnose." ECF No 63 at 12. Under the continuous treatment doctrine, "the patient is excused from challenging the quality of care being rendered until the confidential relationship terminates. Stated another way, the doctrine permits a wronged patient to benefit from his physician's corrective efforts without the disruption of a

malpractice action." *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987). "In such circumstances, the claim only accrues when the continuous treatment ceases." *Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991).

Plaintiff continued to be treated at NCFMC for issues related to her hospitalizations and amputations, which are directly tied to NCFMC's alleged negligence. ECF No. 63-1 at 12 (Plaintiff seen January 15, 2015 "for Hand amputee" and referred to rehabilitation and pain management); *id*. at 7 (seen April 17, 2015, for "oozing from her left hand thumb and index finger tips since her surgery in December."). Although Defendant United States argues Plaintiff was not seen "for the same illness or injury out of which the claim for medical malpractice arose," at least some of her treatment was directly related to the injuries she sustained as a result of the alleged negligence, by associates of the providers who allegedly failed to diagnose Plaintiff's abdominal pain. *See id*. at 305 (doctrine only applies "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction."). Therefore, the court is unable to say the continuous care doctrine does not apply, as Plaintiff has raised a genuine issue of material fact as to the reasons for her treatment at NCFMC after her injuries.

## CONCLUSION

For the reasons set forth above, Defendant United States' motion for summary judgment based on statute of limitations (ECF No. 56) is denied.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 1, 2017

11