IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Zekiya Knox,<br><br>   Plaintiff,<br><br>  v.<br><br>The United States of America;<br>Amisub of SC, Inc., d/b/a Piedmont Medical Center; South Carolina Emergency Physicians, LLC; Jeffrey Warden, MD; Brian Fleet, PA; Piedmont General Surgery Associates, LLC; Alex Espinal, MD; Bret Garretson, MD; and Digestive Disease Associates,<br><br>   Defendants. | C/A No.  0:17-cv-36-CMC<br><br>**Opinion and Order on<br>Motion of Defendants Brian Fleet, PA &<br>South Carolina Emergency Physicians,<br>LLC to Exclude Expert Testimony<br>and for Summary Judgment**<br><br><br>**(ECF No. 122)** |

Through this action, Zekiya Knox ("Plaintiff") seeks recovery for alleged medical malpractice by a variety of medical providers involved in her care from September 2013 through May 2014.[1]  Plaintiff alleges these providers failed to properly and timely diagnose and treat her underlying condition, Crohn's disease, and that this failure led to the development of sepsis. Plaintiff further alleges various Defendants failed to properly treat her sepsis and that the collective errors led to Plaintiff's loss of three limbs.  Plaintiff asserts a single claim for medical negligence

---

[1] Plaintiff alleges errors by each of the following Defendants:  (1) her primary care provider, North Central Family Medical Clinic ("NCFMC"), for which the United States of America is substituted as Defendant; (2) the hospital at which she received emergency and other treatment, Amisub of SC, Inc., d/b/a Piedmont Medical Center ("Piedmont"); (3) Piedmont emergency department medical providers Jeffrey Warden, MD ("Dr. Warden"), Brian Fleet, PA ("Fleet"), and their employer South Carolina Emergency Physicians, LLC ("SCEP"); (4) her surgeon, Alex Espinal, MD ("Dr. Espinal"), and his employer, Piedmont General Surgery Associates, LLC; and (5) her gastroenterologist, Bret Garretson, MD ("Dr. Garretson"), and his employer, Digestive Disease Associates.  *See* ECF No. 88 (Second Amended Complaint).

against all Defendants, though the specifically alleged errors vary between Defendants. *See* ECF No. 88 (Second Amended Complaint).

The matter is before the court on motion of Defendant Fleet and his employer, SCEP. ECF No. 122. This motion seeks (1) to exclude the causation testimony of Plaintiff's expert Fred Mushkat, MD ("Dr. Mushkat") as it relates to Fleet's actions or inactions in his participation in Plaintiff's care, and (2) summary judgment in favor of Fleet and SCEP to the extent SCEP might be held liable as Fleet's employer. For reasons set forth below, the motion is granted in both respects.[2]

## FACTS

Plaintiff alleges and the evidence confirms Fleet had only minimal involvement in her care. *See*, *e.g.*, ECF No. 88 ¶¶ 35, 36. That involvement occurred on April 17, 2014, when Fleet reviewed results of a vaginal wet prep culture and prescribed an antibiotic. ECF No. 122-2 at 15 (PMC Medical Chart); ECF No. 122-3 at 26-28 (Fleet dep.). That culture was taken on April 16, 2014 when Plaintiff was seen in Piedmont's emergency department by Dr. Warden. ECF No. 122-2 at 8; ECF No. 122-3 at 27. The results of the culture were communicated to Plaintiff by a nurse navigator (an employee of Piedmont) on April 18, 2014. ECF No. 122-2 at 15.

Pursuant to the "standard practice in the emergency room," a "nurse navigator" determined what materials were relevant for Fleet's review and presented them to him. ECF No. 122-3 at 19-

---

[2] SCEP seeks summary judgment through this motion only to the extent Plaintiff's claim relates to Fleet's actions. SCEP also joins a separate motion by Dr. Warden for exclusion of causation opinion and summary judgment relating to Dr. Warden's involvement in Plaintiff's care. *See* ECF No. 121 (Motion by Dr. Warden and SCEP).

24.[3] Fleet was not shown and, consequently, did not review the results of a urine culture taken during the same visit. The results of that culture indicated possible contamination and recommended a new specimen be collected. *Id.* at 15-19. Fleet testified he would not have taken any other action, even if he had seen the results of the urine culture because Plaintiff had already been given medication for a urinary tract infection ("UTI") based on the preliminary urinalysis performed on April 16, 2014. *E.g.*, *id.* at 15.

## EXPERT REPORT AND TESTIMONY

Plaintiff identified Dr. Mushkat as one of her medical experts. ECF No. 88, Ex. A (preliminary opinion attached to Second Amended Complaint); ECF No. 122-6 (Dr. Mushkat's October 22, 2017 letter to Plaintiff's counsel stating his opinions); ECF No. 152 at 2 (Plaintiff's expert witness disclosures). Fleet asserts and Plaintiff does not contest that Dr. Mushkat is the only expert identified to offer an opinion as to whether Fleet's actions or inactions were negligent or contributed to Plaintiff's injuries. The only evidence presented of Dr. Mushkat's opinions is set forth in his October 22, 2017 letter to Plaintiff's counsel, which presumably serves as his Expert Witness Report, and in his deposition. *See* ECF No. 122-6 (letter); ECF No. 122-7 (Dr. Mushkat dep. excerpts filed by Fleet); ECF No.131-12 (Dr. Mushkat dep. excerpts filed by Plaintiff).

**Dr. Mushkat's Report.** In what serves as his Expert Witness Report, Dr. Mushkat addresses Fleet's actions as follows:

> Regarding the follow up actions that Brian Fleet, P.A. took on April 17, 2017, based upon his testimony, it appears that he was supplied the results of the wet prep test along with the following: UTI, Keflex, negative pregnancy test and no allergies. On this basis alone, Brian Fleet prescribed an additional antibiotic,

[3] There are no allegations or evidence the nurses involved in Plaintiff's care (including the nurse navigator) were employees of SCEP.

3

Flagyl. Mr. Fleet did not review Ms. Knox's medical record that had given rise to the test in the first place or the prior [Emergency Department] treatment. An accepted standard of care required Mr. Fleet to review Ms. Knox's medical records from that most recent visit. If he had done so, he would have seen the [urine] culture report that recommended re-collection of the specimen. Seeing that would have called into question the basis of the diagnosis and should have led to further evaluation including calling the patient back for reevaluation. That did not occur.

ECF No. 122-6 at 11, 12.

**Dr. Mushkat Deposition Testimony.** In his deposition, Dr. Mushkat conceded Fleet prescribed an appropriate antibiotic based on the lab results he was given. ECF No. 122-7 at 20-22 (Dr. Mushkat dep. at 104-06). Dr. Mushkat, nonetheless, opined Fleet deviated from the applicable standard of care by failing to review Plaintiff's other lab results. *Id.* According to Dr. Mushkat, had Fleet done so, he would have seen Plaintiff had "a complicated urinary tract infection, multiple organisms," and a high white cell count. *Id.* at 22 (Dr. Mushkat dep. at 106). At that point, Fleet should have taken his concerns to a physician on duty, whose responsibility it would have been to decide what further follow up was appropriate. *Id.*; *see also id.* at 23 (Dr. Mushkat dep. at 107, agreeing Fleet's only further responsibility was to raise concerns with a physician).

Dr. Mushkat opined that if Fleet took his concerns to a physician other than Dr. Warden, "there might have been a very different outcome." *Id.* at 24 (Dr. Mushkat dep. at 108). If Fleet took his concerns to Dr. Warden, however, Dr. Warden "most likely" would have said he had "already analyzed th[e] whole problem" and would have determined no further treatment was required than the additional medication Fleet prescribed. *Id.*

4

## DISCUSSION

### I. Exclusion of Dr. Mushkat Causation Testimony as to Fleet

**Defendants' Arguments.** Fleet and SCEP argue Dr. Mushkat's causation testimony relating to Fleet's actions should be excluded because it "relies upon a series of attenuated assumptions . . . rendering his opinion unreliable as a matter of law." ECF No. 122-1 at 8. Fleet characterizes Dr. Mushkat's causation opinion as based on assumptions "if Fleet had questioned the diagnosis . . . , Plaintiff would have been called back to the emergency department," would have returned, and on return would have been diagnosed with Crohn's disease, been admitted, and been treated. *Id.* at 9, 10. Fleet argues this testimony is insufficient to satisfy Federal Rule of Evidence 702's standards for admission of expert testimony because it connotes nothing "more than subjective belief or unsupported speculation." ECF No. 122-1 at 9 (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589-90 (1993)).

**Plaintiff's Response.** Plaintiff has not addressed this argument despite filing a consolidated response to separate motions filed by Fleet and Dr. Warden (both of which are joined by SCEP). ECF No. 131.[4] Plaintiff's consolidated response focuses on Dr. Warden's actions. Beyond the caption and introductory paragraph, which merely identify Fleet as a party and movant, Plaintiff mentions Fleet only twice: once in her presentation of the underlying facts; and once in introducing the scope of Dr. Mushkat's proffered opinions.[5] Neither these references nor any

---

[4] Both of those motions seek exclusion of Dr. Mushkat's causation testimony as well as summary judgment. ECF No. 131.

[5] In her presentation of facts, Plaintiff states "Physician assistant Bryan Fleet spoke with Ms. Knox by phone on April 18, 2014, where he reported the results of an additional test and called in a prescription for a second antibiotic." ECF No. 131 at 3 (citing record that refers to entry by "MB,"

argument or deposition excerpt proffered by Plaintiff addresses the sufficiency of Dr. Mushkat's causation opinion as it relates to Fleet.[6]

**Discussion.** As summarized above, Fleet and SCEP raised substantial concerns as to the admissibility of Dr. Mushkat's proffered causation opinion as it relates to Fleet's actions. While Plaintiff filed a joint response to this and a companion motion by Dr. Warden and SCEP, she does not specifically address the arguments relating to Fleet's actions. ECF No. 131. Under these circumstances, the court finds Plaintiff has failed to satisfy her obligation, as proponent of Dr. Mushkat's testimony, to establish its admissibility. *See* Fed. R. Civ. P. 702, Committee Notes on Rules – 2000 Amendments (citing *Bourjaily v. United States*, 483 U.S. 171 (1987) for proposition "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

The court agrees Dr. Mushkat's opinion regarding the effect of Fleet's failure to review Plaintiff's urine culture report is too speculative to be admitted. Dr. Mushkat conceded in his deposition that Fleet's duty was to bring this matter to the attention of a physician on duty. ECF No. 122-7 at 23 (Dr. Mushkat dep. at 107). However, Dr. Mushkat agreed that Dr. Warden's

---

ECF No. 131-9 at 4). Fleet challenges the accuracy of this statement in his reply, noting the records reflect the call was made by a nurse and he never spoke with Knox. ECF No. 136 at 1, 2. Fleet's challenge appears to be well founded, though it need not be resolved for purposes of the present motion.

[6] The excerpts Plaintiff attaches from Dr. Mushkat's deposition, likewise, focus on Dr. Mushkat's opinions as to Dr. Warden's actions and inactions. Fleet is mentioned only in an incomplete query and response on the last page of the excerpt. *See* ECF No. 131-12 at 16 (Mushkat dep. at 104, ending midsentence in responding to query whether he "believe[s] [Fleet] should have reviewed the entire chart" by stating "Not necessarily the entire chart but the lab [. . . ]".).

actions would not likely have been different had he been the physician to whom the concern was raised. *Id.* at 24 (Dr. Mushkat dep. at 108).

Dr. Mushkat notes he would have called Plaintiff to return for "another look" had a physician's assistant brought such a result to his attention. *Id.* Nowhere, however, is it suggested that Fleet had a duty to bring the culture results to the attention of a physician other than Dr. Warden. Consequently, there is no showing the alleged failure by Fleet caused Plaintiff's injuries.

## II. Summary Judgment

**Standard.** Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**Discussion.** Fleet argues he is entitled to summary judgment due to insufficient evidence of causation whether or not Dr. Mushkat's testimony is excluded. Though not identical, Fleet's arguments in support of summary judgment are similar to his arguments for exclusion of Dr. Mushkat's testimony. As with the exclusion arguments, Plaintiff offers no opposition specific to this aspect of Fleet's motion. Most critically, she points to no evidence of causation other than that addressed in Fleet's motion.

For reasons explained in the preceding section, Dr. Mushkat's causation testimony is excluded as it relates to Fleet's actions or inactions. As Plaintiff points to no other evidence of causation, this leaves Plaintiff with no evidence to support a necessary element of her claim against Fleet. The court, therefore, grants Fleet and SCEP's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, Fleet and SCEP's motion to exclude Dr. Mushkat's causation testimony as to Fleet's actions or inactions and for summary judgment is granted in full (ECF No. 122). This resolves any and all claims against Fleet and any claims against SCEP to the extent based on Fleet's actions or inactions.[7]

IT IS SO ORDERED.

s/Cameron McGowan Currie
CAMERON McGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 29, 2018

---

[7] Because Plaintiff also seeks to hold SCEP responsible based on the actions or inactions of Dr. Warden, this ruling does not resolve all claims against SCEP.