IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Zekiya Knox,<br><br>        Plaintiff,<br><br>   v.<br><br>The United States of America;<br>Amisub of SC, Inc., d/b/a Piedmont Medical Center; South Carolina Emergency Physicians; Jeffrey Warden, MD; Brian Fleet, PA; Piedmont General Surgery Associates, LLC; Alex Espinal, MD; Bret Garretson, MD; and Digestive Disease Associates,<br><br>        Defendants. | C/A No. 0:17-cv-36-CMC<br><br><br><br>Opinion and Order Denying Motion for Summary Judgment of Defendant United States<br>(ECF No. 123) |

Through this action, Zekiya Knox ("Plaintiff") seeks recovery for alleged medical malpractice by a variety of medical providers involved in her care between September 2013 and May 2014.[1] Plaintiff alleges these providers failed to properly and timely diagnose and treat her underlying condition, Crohn's disease, and that this failure led to the development of sepsis. Plaintiff further alleges various Defendants failed to properly treat her sepsis and that the collective

---

[1] Plaintiff alleges errors by each of the following Defendants: (1) her primary care provider, North Central Family Medical Clinic ("NCFMC"), for which the United States of America ("United States") is substituted as the Defendant; (2) the hospital at which she received emergency and other treatment, Amisub of S.C., Inc., d/b/a Piedmont Medical Center ("Piedmont"); (3) Piedmont emergency department medical providers Dr. Jeffrey Warden ("Dr. Warden"), Brian Fleet, PA ("Fleet"), and their employer South Carolina Emergency Physicians, LLP ("SCEP"); (4) her surgeon, Alex Espinal, MD ("Dr. Espinal"), and his employer, Piedmont General Surgery Associates, LLC; and (5) her gastroenterologist, Bret Garretson, MD ("Dr. Garretson"), and his employer Digestive Disease Associates. See ECF No. 88 (Second Amended Complaint).

errors led to Plaintiff's loss of three limbs. Plaintiff asserts a single claim for medical negligence against all Defendants, though the specifically alleged errors vary between Defendants. *See* ECF No. 88 (Second Amended Complaint).

The matter is before the court on motion of Defendant United States' for summary judgment based on the statute of limitations. ECF No. 123. The United States argues Plaintiff filed her tort claim with the applicable agency on June 14, 2016, more than two years after the statute of limitations allegedly accrued no later than June 6, 2014. ECF No. 123-1 at 8. Plaintiff filed a response in opposition, arguing her claim did not accrue in May or June of 2014 and her administrative claim was timely filed. ECF No. 133. Alternatively, she relies on equitable tolling. Finally, she argues the continuous treatment rule applies and the claim against the United States accrued only after her treatment at NCFMC ended. *Id.* at 17. The United States filed a reply. ECF No. 141.

For reasons set forth below, the court finds as a matter of law equitable tolling and the continuous treatment doctrine do not apply. Nonetheless, the motion is denied as there remains a genuine issue of material fact as to when Plaintiff knew or should have known of the cause of her injury. More specifically, the critical, unresolved issue is at what point Plaintiff knew, or in the exercise of due diligence, should have known, that undiagnosed and/or untreated Crohn's disease led to her bowel perforation, fistulas, and sepsis.

## COMPLAINT ALLEGATIONS

Plaintiff alleges injury after abdominal pain, which she alleges was never properly treated, developed into "significant damage to her intestines and caused a life threatening infection," sepsis. ECF No. 88, Sec. Am. Compl. ¶ 37. Plaintiff originally presented to the Piedmont

Emergency Room ("Piedmont ER") on September 13, 2013, complaining of persistent abdominal pain. *Id.* at ¶ 9. She was seen by Defendant Dr. Warden, who performed a physical examination and ordered lab testing, ultrasound of the lower abdomen, and CT scan. *Id.* at ¶¶ 9-11. Plaintiff was discharged from the ER with narcotic pain killers and an instruction to follow up with a gastroenterologist. *Id.* at ¶ 14. On September 19, 2013, Plaintiff was seen by Defendant Dr. Garretson, a gastroenterologist, who scheduled and conducted a colonoscopy on September 25, 2013. *Id.* at ¶¶ 15-16. Dr. Garretson was unsure if his findings represented "appendicitis or IBD" (*id.* at ¶ 16), so he referred Plaintiff to a surgeon, Defendant Dr. Espinal, that same day. *Id.* at ¶ 17. Dr. Espinal ruled out acute abdominal process and ordered a CT scan, but Plaintiff alleges she was never informed of that appointment. *Id.* at ¶¶ 18, 18.1. The next day, September 26, Plaintiff went to see April Logan, a physician's assistant at NCFMC, a federally funded community health care center, complaining of abdominal pain. *Id.* at ¶ 19. Ms. Logan ordered an ultrasound, which was performed September 30, 2013 and showed "prominent bowel loops . . .with a somewhat thickened appearance." *Id.* at ¶¶ 19.1, 20. Ms. Logan took no action in response to this finding. *Id.* at ¶ 20.

Plaintiff was next seen by Ms. Logan on January 14, 2014, for abdominal pain. *Id.* at ¶ 24. Ms. Logan referred Plaintiff back to Dr. Espinal, who saw Plaintiff in February 2014.[2] Plaintiff was prescribed prednisone at that appointment and "the records reflect there was to be an

_____

[2] The visit to Dr. Espinal in February 2014 appears to have been prompted by a series of telephone communications between NCFMC and Plaintiff's mother. *See* ECF No. 121-6 at 16, 17 (summary of phone messages and conversations). The first contact was apparently initiated by Ms. Logan in January 2014 after she reviewed Plaintiff's September 2013 colonoscopy results and, ultimately, led to a request by Plaintiff's mother for a referral to a surgeon to have Plaintiff's appendix removed. *Id.*

appointment scheduled with Dr. Garretson, [but] this was never made known to Ms. Knox." *Id.* at ¶ 26. On March 21, 2014, Plaintiff returned to NCFMC complaining of abdominal pain. *Id.* at ¶ 28. The physician she saw ordered another ultrasound, which was performed on April 4, 2014, and "noted tubular structures and encouraged a CT scan." *Id.* at ¶¶ 29, 30. Plaintiff was to follow up at NCFMC on April 14 for ultrasound results, but instead returned to the Piedmont ER by ambulance that day. *Id.* at ¶ 31. Tests and examination showed an elevated white count, lower quadrant pain, and "what was then believed to be bacteria in her urine." *Id.* at ¶ 32. Dr. Warden "remarked her presentation was similar to her presentation in September," and accessed those records, but the only treatment rendered was a prescription for an antibiotic for a urinary tract infection. *Id.* at ¶¶ 33-34. Defendant Fleet, a physician's assistant in the ER, ordered an additional antibiotic after reviewing results of a vaginal culture on April 18, 2014. *Id.* at ¶ 36.

On May 4, 2014, Plaintiff returned to the Piedmont ER. *Id.* at ¶ 37. She was diagnosed with "either an infected inflamed appendix or a flare up of IBD that was never properly discovered or treated." *Id.* She went into septic shock and ultimately lost three limbs. *Id.* at ¶ 39.

## MEDICAL CHRONOLOGY

Various medical records were attached by the parties to the motion and responses. The records are from Plaintiff's May 2014 hospitalization at Carolinas Medical Center ("CMC") and later treatment at NCFMC.

**Admission to CMC.** Plaintiff was admitted to CMC on May 6, 2014 as a transfer from Piedmont. ECF No. 123-13 at 1. The discharge diagnoses from Piedmont were: "Crohn disease with exacerbation; small bowel perforation with multiple fistulas, status post exploratory laparotomy with partial resection of small bowel, fistula repair and ileostomy; acute respiratory

4

failure; systemic inflammatory response due to infection with evolving multiorgan system failure; severe metabolic acidosis with lactic acidosis; septic shock; cardiogenic shock, echocardiogram noting severe reduced left ventricular function with estimated ejection fraction of 10%; anemia related to dilution primarily; hypoglycemia; hypocalemia." *Id.*

A History and Physical on admission to CMC notes she "has a history of chronic abdominal pain and has previously been evaluated by a surgeon for chronic abdominal pain and a history of Crohn's disease." ECF No. 123-14. Past Medical History is listed as "possible Crohn's disease." *Id.* The assessment/plan noted she was an "18-year-old female with history of possible Crohn's disease who presented in septic shock on multiple vasopressors him [*sic*] a status post midline laparotomy with ileocecectomy and end ileostomy formation." *Id.* at 4. She was taken to the operating room for emergency surgery "to explore the possibility of pelvic sepsis." *Id.*

On May 14, 2014, she was seen by an orthopedist who noted her history and diagnosis as "s/p SBO and perforation with peritonitis and sepsis requiring vasopressors and subsequent sever (sic) dry gangrene to bilateral feet and hands." ECF No. 65-1 at 28. A May 16, 2014 vascular consultation noted Plaintiff

> is an unfortunate 19-year-old female who was transferred from an outside facility in septic shock and on 3 pressors. An ileocecectomy and ileostomy was performed in the outside facility however throughout that night she clinically deteriorated. An echocardiogram was performed at some point that showed she had an EF of less than 10%. She was then transferred here for further management. Since then she's had multiple abdominal surgeries. She remained in shock for several days. It was noticed at some point that she started to develop dry gangrene of her right fingers and toes. She recently has clinically improved to the point she is not on any pressors.

*Id.* at 23. An addendum stated Plaintiff was "too sick for any interventions. Her extermities (sic) are non viable and well beyond any recovery at this point. Care should be life over limb at this

point." *Id.* On May 17, 2014, a Surgery Attending Progress note stated Plaintiff was "progressing adequately." *Id.* at 21.

On May 21, 2014, Plaintiff was "informed about her care" by the medical staff. ECF No. 123-16. She had previously been asking questions but her parents were preventing the medical team from speaking to Plaintiff about her care. *Id.* The same day, Plaintiff's discharge plan was discussed with her interdisciplinary team and family. ECF No. 123-17. The hospital note stated "Ortho explained anticipated amputation to all 4 extremities at various levels. Pt. asked appropriate questions. Timing of surgery is not yet determined." *Id.*

A progress note signed on May 21, 2014, notes Plaintiff was "seen in follow up peritonitis and C diff colitis in setting of Crohn. Events of family meeting reviewed from this AM. Pt made aware of her clinical situation." ECF No. 65-1 at 9. Under "Impression and Plan" are noted diagnoses of:

1. Polymicrobial sepsis and peritonitis with enterococcus, MRSA, Kleb, Citrobacter, Clostridium from bowel perforation s/p multiple washouts.
2. Question of right atrial thrombus with emboli to limbs vs vasoconstrictor ischemic . . .
3. C diff colitis. .
4. Renal insufficiency . . .
5. Limb gangrene . . .
6. Leukocytosis cont to improve.

*Id.* A nephrology progress note also dated May 21 noted under "Impression" Plaintiff had "Crohn's colitis s/p ileocecectomy and end ileostomy for small bowel perf at OSH on 5/5/2014," and noted she had sepsis with "MODS including stress induced cardiomyopathy, acute respiratory failure, vasodilatory shock, 4 limb ischemia, and non-oliguric AKI." The note ends "I think her AKI will continue to resolve." *Id.* at 12-13. A Surgery Red-Progress note the same day stated

"18-year-old female admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs endocarditis.") *Id.* at 19.

A pediatric PM&R consult on May 23 stated Plaintiff's history as follows:

Per report episode of pain began 5/2/14 Friday with nausea vomiting while under treatment for UTI. Patient arrived at Piedmont Medical Center (PMC) 5/4/14 with acute lower abdominal pain in setting of 2 year history of chronic abdominal pain and Crohn's disease. This admitted to ICU at PCM with hypotension, tachycardia, elevated lacate, presumed sepsis. Abdominal CT at PMC showed SBO with inflammation of the ileum. Acutely worsened that afternoon . . . taken emergently to operating room for ex-lap and findings included dilated ileum, fistula to the right pelvis and between loops of small bowel, plus bowel perforation.

ECF No. 123-18. Surgeries are noted (in addition to the initial laparoscopy, ileocecectomy, and end ileostomy on May 5) on May 6, May 7, May 9, May 11, May 13, and May 17, mostly for reopening laparotomy and multiple abdominal washouts. The note also stated Plaintiff had "2 year history of chronic abdominal pain. CT concerning for IBD. Limited follow up. Seen in ED 3/14/14 for acute lower abdominal pain." *Id.* at 2. The note states "did discuss rehabilitation plan with patient as above." *Id.* at 7.

Plaintiff was evaluated by Dr. Dukjim Im, who recommended pediatric rehabilitation, as opposed to skilled nursing or long term acute care, to provide greater benefit "from a functional and medical standpoint, as well as a psychological standpoint." ECF No. 123-20 at 1. He noted Plaintiff had "severe debilitation after a month of critical illness including multiorgan failure sepsis, now finds herself facing 4 limb amputation in the coming weeks." *Id.*

Plaintiff was discharged from CMC inpatient care to the Levin Children's Hospital Rehabilitation Center within CMC on June 6, 2014. Listed as discharge diagnoses were sepsis, likely intraabdominal source; small bowel obstruction with perforation at OSH; acute postoperative renal insufficiency; lactic acidosis; tachycardia; cardiomyopathy; limb threatening

ischemia; cephalic thrombus; respiratory failure/ARDS; acute kidney injury secondary to shock/hypoperfusion with ATN and rhabdomyolysis; thrombocytopenia; C-diff; polymicrobia surgery culture; gram negative rod positive blood culture; hyperkalemia; shock liver; TF intolerance; RA thrombus; debility; and foot drop. ECF No. 123-21 at 1. Secondary discharge diagnosis was "possible hx of inflammatory bowel disease." *Id.*

The amputations were performed at CMC on July 29, 2014. ECF No. 123-22. The Operative/Procedure Documentation noted amputations of the right upper extremity above the elbow, left leg above the knee, right leg above the knee, and multiple left fingers. *Id.* Plaintiff remained an inpatient until October 28, 2014.

**Post hospitalization treatment at NCFMC.** Plaintiff was seen at NCFMC on November 26, 2014, for a hospital follow up. The note states she was

> admitted to CMC on May 4th and discharged on 10/28/14. She was admitted for Crohons [*sic*] disease. She was admitted to PMC for vomiting and was transferred to CMC. She became septic and was diagnosed to have Crohons disease and she had amputation of her legs and right arm . . .she was in Rehab for three months.

ECF No. 123-23. On January 15, 2015, she was seen "for Hand amputee" and for referrals for rehabilitation and pain management. ECF No. 123-24. Dr. Tafari referred her to occupational therapy and for pain medicine. *Id.* On February 18, 2015, Plaintiff's mother called for a referral for level 4 prosthetics for both legs and one arm. ECF No. 123-25. Dr. Tafari directed the employee who took the call to return it and "get specifications or pre prepared form" for prosthetics. *Id.*

On April 15, 2015, Plaintiff's home health nurse called NCFMC "requesting wound culture of index finger on lt hand. Partly amputated and is still draining." On April 17, 2015, Plaintiff was seen by Dr. Tafari for "oozing from her left hand thumb and index finger tips since her surgery

in December." [3] ECF No. 123-27. She was prescribed medication. *Id.* On September 3, 2015, she presented for evaluation for dietary supplements, as her ileostomy was to be reversed. ECF No. 123-28. Dr. Tafari advised her to "get me the evaluation by her nutritionist about the indications to start her on ensure. Spoke to her nurse at gastroenterologist and there was no formal recommendation to start her on ensure." *Id.* The last NCFMC visit in the provided medical records was on January 11, 2016, for "paperwork for prosthesis," which was completed by Dr. Tafari. ECF No. 123-29.

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[3] Neither party filed medical records regarding a December surgery, although a "Physician Communication and Interim Order" from Gentiva home health notes "Pt. had finger tip revisions early January 2015 – to remove end bone for better skin coverage at finger tips." ECF No. 123-26 at 3.

The Federal Tort Claims Act waives the sovereign immunity of the United States for civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674.

## DISCUSSION

The United States argues Plaintiff's claim is barred by the statute of limitations because her administrative claim was received by the appropriate agency on June 14, 2016, more than two years after it argues the statute of limitations began to accrue – no later than June 6, 2014, when Plaintiff was transferred from acute care hospitalization to inpatient pediatric rehabilitation pending amputations. ECF No. 123-1. The United States contends Plaintiff was made aware of her diagnosis during an ethics consult on May 21, 2014, while Plaintiff was hospitalized at CMC, and was informed of the fact she would need amputations. *Id.* at 10. It points to deposition testimony from Plaintiff and her parents to show they were aware of some potential negligence during the time frame advanced by the United States. The United States also contends equitable tolling is not appropriate in this case, and the continuous treatment doctrine is not applicable because the care provided by NCFMC after Plaintiff's amputations was by a different NCFMC physician and unrelated to Plaintiff's bowel disease. *Id.* at 16.

Plaintiff argues the statute of limitations did not begin to run in May or June of 2014, as she did not have the required knowledge of the existence of her injury and its cause at that point. ECF No. 133. She contends testimony from her parents is not relevant to the statute of limitations

issue.  Plaintiff notes her severe incapacitation kept her from pursuing her claim while she was receiving inpatient care.  *Id.* at 13.  Finally, Plaintiff argues the continuous treatment doctrine applies, as she was treated at NCFMC after her limbs were amputated.  *Id.* at 17.

In reply, the United States again urges Plaintiff was informed of her injury and its cause between May 21, 2014, and June 6, 2014 and was "awake, alert and oriented, interacting appropriately with providers, asking appropriate questions, and engaged in her own decision making."  ECF No. 141 at 5.  It contends Plaintiff's parents' testimony is relevant to the statute of limitations determination, and that Plaintiff has provided insufficient evidence to establish equitable tolling or mental incapacitation.  *Id.* at 10.  Finally, the United States argues the continuing treatment doctrine does not apply.  *Id.* at 13.

a. *Accrual of Statute of Limitations*

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . . . ."  28 U.S.C. § 2401(b).  A claim accrues when the plaintiff knows, or in the exercise of due diligence should have known, of both the existence and the cause of the injury.  *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Gould v. U.S. Dept. of Health and Human Svcs.*, 905 F.2d 738, 742 (4th Cir. 1990).  However, accrual of the claim does not "await awareness by the plaintiff that his injury was negligently inflicted."  *Kubrick*, 444 U.S. at 123.  The Fourth Circuit has defined "cause" for purposes of the FTCA, holding a plaintiff need not know "the precise medical cause" of the injury.  *Kerstetter v. United States*, 57 F.3d 362, 364-65 (4th Cir. 1995); *see also Hahn v. United States*, 313 F. App'x 582, 585 (4th Cir. 2008) ("A claim will accrue even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury.").

11

"[O]nce the claimant is in possession of the critical facts that he has been hurt and who has inflicted the injury, the claimant has a duty to make diligent inquiry into whether the injury resulted from a negligent act." *Hahn*, 313 F. App'x at 585 (citing *Kubrick*, 444 U.S. at 122); *Doe v. United States*, 280 F.Supp.2d 459, 464 (M.D.N.C. 2003) ("A plaintiff possesses this knowledge [existence and cause of his injury] when he becomes aware of the critical facts that he has been hurt and who has inflicted the injury. A plaintiff armed with these critical facts must investigate to determine if the injury resulted from negligent conduct.") (citing *Kubrick*, 444 U.S. at 122-24).

In a prior Order regarding the statute of limitations, the court disagreed with the position of the United States that Plaintiff "knew or should have known" of her injury and its cause when she presented to the Piedmont ER on May 4, 2014. *See* ECF No. 77. Now the United States argues the claim accrued on May 21, 2014, when it contends Plaintiff was informed of her injury and its cause at an ethics consult. Medical records note Plaintiff was informed by CMC physicians of her condition and pending amputations on May 21, 2014. ECF No. 123-16; 123-17. However, although Plaintiff knew she had sepsis and faced amputations at that point, it appears neither she nor her doctors were clear as to the underlying cause of her injury – that failure to diagnose and/or treat her abdominal pain resulted in bowel perforation and subsequent sepsis. There is a genuine dispute of material fact as to when Plaintiff knew or should have known the underlying cause of her injuries was her undiagnosed and/or untreated Crohn's disease.

The previously submitted medical records indicate the underlying cause of Plaintiff's sepsis remained debatable until well after she was admitted to Piedmont, transferred to CMC, and underwent multiple surgeries and treatments in an effort to save her life. For example, a CMC surgical progress note from May 21, 2014 noted Plaintiff was "admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs. endocarditis)," ECF No. 65-1 at 19,

while the June 6 CMC discharge summary noted a "possible hx of inflammatory bowel disease" and "sepsis, likely intraabdominal source." ECF No. 123-21. The documentation filed with the current motion does not resolve this confusion. Viewing the medical records and facts which Plaintiff allegedly knew or should have known as of June 14, 2014, the United States has not shown entitlement to summary judgment that Plaintiff knew or should have known the underlying cause of her injury at that time.

On May 21, 2014 Plaintiff was made aware of her current medical condition and pending amputations. *See* ECF No. 123-16 (stating generally "patient is now informed about her care"); 123-17 (stating "MD's presented condition and plan. Ortho explained anticipated amputation to all 4 extremities at various levels."). Yet there is no evidence she was told her previously undiagnosed (or at least uncommunicated) and untreated Crohn's disease led to the bowel perforation which led to sepsis, or septic shock. The United States cites *Kerstetter v. United States* in support of its argument that only a general level of knowledge is required for accrual. 57 F.3d 362, 364-65 (4th Cir. 1995). However, it does not appear Plaintiff's physicians had determined her sepsis came from an exacerbation of Crohn's disease on May 21 when the United States insists Plaintiff was fully informed of her medical condition. ECF No. 65-1 at 19 (May 21, 2014 surgical progress note stating Plaintiff was "admitted with Crohn's disease, presumed sepsis of unclear etiologies (bowel perforation vs. endocarditis)").

Further, Plaintiff's and her parents' generalized testimony they, in retrospect, "knew something was seriously wrong" (Plaintiff dep., ECF No. 123-31) and were "wondering how this went undetected" (Plaintiff's father dep., ECF No. 123-32) during the May 4, 2014 hospitalization is inadequate to establish accrual of the statute of limitations. Plaintiff's mother testified she felt the doctors "should have did better than what you did" "as early as when I first took her to the

13

doctor," and that she knew there was a failure by the doctors to diagnose Plaintiff properly when they got to CMC in June. ECF No. 123-33 at 148-50. However, this testimony does not establish Plaintiff knew or should have known of the underlying cause of her injury in May 2014. In fact, Plaintiff testified she first learned she had Crohn's disease at CMC around the time she was ready to come home. Plaintiff dep. 177:23-178:13, ECF No. 133-6 at 8-9. Records reflect she was discharged October 28, 2014. ECF No. 123-23.

The United States argues alternatively the statute of limitations accrued no later than June 6, 2014, when Plaintiff was transferred to inpatient rehabilitation awaiting amputations. However, it fails to explain why this transfer marked the accrual of the statute of limitations, instead focusing on the time period between May 21 and June 6. Examination of the discharge summary to inpatient rehabilitation on June 6, however, mentions only "sepsis, likely intraabdominal source" and "possible hx of inflammatory bowel disease." ECF No. 123-21 at 1. The United States then cites a medical record from June 11, 2014, which noted:

> Z then went into her health history talking about the symptoms that they attributed to menses in the beginning, and then sought medical treatment for as they persisted. She talked around some parts in the story that are unclear to her because she was unconscious or sedated, but she was clear on the fact that she had not liked being intubated when she woke up. Then she started talking about the potential for amputations.

ECF No. 141 at 10 (citing 141-7; Palliative Care Documentation from CMC dated June 11, 2014). While the United States argues this shows Plaintiff's awareness of the cause of her injuries, it reflects only awareness that prior symptoms were initially attributed to menses, that she sought treatment as symptoms persisted, and that amputations were possible. Further, it indicates Plaintiff was *unaware* of much of the course of her hospital stay, "because she was unconscious or sedated."

The United States has failed to show at what point Plaintiff knew or, in the exercise of due diligence, should have known of both the existence and cause of her injury. The medical records indicate Plaintiff's treating doctors at CMC had not agreed on the underlying cause of her bowel perforation and sepsis during her inpatient stay in May – June 2014. The records also reflect no failure of due diligence by Plaintiff during the period in which she remained hospitalized and underwent seven surgeries. Because the record does not show when Plaintiff was or should have been aware NCFMC's alleged failure to diagnose her abdominal pain/Crohn's disease may have caused her injury, a disputed issue of material fact remains. The court cannot say as a matter of law the statute of limitations accrued before June 14, 2014. Therefore, it is for the jury to determine when the statute of limitations accrued. *See Kronisch v. United States,* 150 F.3d 112, 124 (2d Cir. 1998) ("The question whether [a plaintiff] knew or should have known the critical facts of his claim, and the subsidiary question of whether he exercised due diligence to discover them are ordinarily matters for the finder of fact, except where it is beyond dispute that plaintiff should have known [or] indeed, actually knew the critical facts of his claim.") (citing *Guccione v. United States*, 670 F.Supp. 527, 537 (S.D.N.Y. 1987); *Peterson v. United States,* No. 6:14-cv-134, 2017 WL 4982807 (E.D. Ky. May 22, 2017) (holding actual date of accrual is a question of fact); *Webb v. United States*, 535 F.Supp.2d 54, 58 (D.D.C. 2008) ("What constitutes accrual of a cause of action is a question of law, even though the specific moment when accrual occurs is generally a question for the jury. Accordingly, a court may dismiss a FTCA claim on statute of limitation grounds only if no reasonable person could disagree on the date on which the cause of action accrued.") (internal citations omitted). The motion of the United States for summary judgment based on statute of limitations is denied.

    *b. Equitable Tolling*

Plaintiff contends that even if the statute of limitations accrued more than two years before June 14, 2016, her "severe incapacitation" entitles her to equitable tolling because she was not in a position to "receive, process, or act on information that typically triggers the limitations period." ECF No. 133 at 14-16. The United States argues equitable tolling does not apply in this case, as "[n]o allegations in the Complaint meet this burden of establishing the elements to ask this Court to toll the strict statute of limitations under the FTCA." ECF No. 123-1 at 15. Further, the United States submits Plaintiff was not mentally incapacitated within the legal meaning of the term as of May 21, 2014, or at least by June 6, 2014.[4] ECF No. 141 at 11.

"Principles of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations." *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). The FTCA's statute of limitations is not jurisdictional and is subject to equitable tolling. *United States v. Kwai Fun Wong*, 575 U.S. __, 135 S. Ct. 1625, 1633 (2015). Equitable tolling is a "discretionary doctrine that turns on the facts and circumstances of a particular case," and has generally been applied in two situations: if plaintiff was prevented from asserting her claims due to wrongful conduct by defendant, or if "extraordinary circumstances beyond plaintiff's control made it impossible to file the claims on time." *Hutchinson*, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be

---

[4] As recognized by the United States, Plaintiff was severely incapacitated as a result of her sepsis and related hospitalizations and treatment. *See* ECF No. 141 at 11. The court disagrees with the United States that Plaintiff's incapacitation ended when she was informed of her medical condition on May 21, 2014, or transferred to inpatient rehabilitation pending amputations on June 6, 2014. Plaintiff underwent multiple surgeries and remained an inpatient until October 28, 2014. ECF No. 123-23 at 1.

unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.*

Equitable tolling does not work to extend the time before the statute of limitations begins to accrue, but may excuse a late filing. In order to apply equitable tolling, extraordinary circumstances must be shown to have "prevented [Plaintiff] from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see also Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016) ("Plaintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently <u>and</u> extraordinary circumstances prevented them from filing on time."); *Santos v. United States*, 559 F.3d 189, 199 (3rd Cir. 2009) ("[W]e emphasize that the discovery rule, which governs a claim's accrual date for statute of limitations purposes, is distinct from equitable tolling, which applies where circumstances unfairly prevent a plaintiff from asserting her claim.").

Plaintiff failed to include allegations in her Second Amended Complaint (ECF No. 88, filed Oct. 25, 2017) regarding incapacitation or inability to file prior to June 14, 2016. Plaintiff was on notice of the United States' statute of limitations defense at the time she filed her Second Amended Complaint, as the United States' first motion for summary judgment on statute of limitations grounds had been denied on June 1, 2017. ECF No. 77. In fact, the United States argued in its first motion "[n]o allegations in the Complaint meet this burden of establishing the elements to ask this Court to toll the strict statute of limitations under the FTCA." ECF No. 56.

As noted by the United States, there was a significant period of time after discharge from her hospitalizations in October 2014 during in which Plaintiff could have filed an administrative claim. There are no allegations supporting a finding extraordinary circumstances prevented filing until June 14, 2016. *See Rhodes v. Senkowski,* 82 F.Supp.2d 160, 170 (S.D.N.Y. 2000) ("However,

even if [Plaintiff] was incapacitated during these three hospitalizations, [he] still had many months throughout the [statute of limitations period] . . .in which to prepare his petition, and [he] has not presented any evidence to show that he was unable to pursue his legal rights during the period within the limitations period that he was not hospitalized."); *Speiser v. United States Dept. of Health and Human Svcs.,* 670 F.Supp. 380, 384 (D.D.C. 1986) ("Even assuming plaintiff was incompetent during her hospitalizations, she has not established that during the 99 days she was not hospitalized she was impaired to the point of being *noncompos mentis*."); *see also Denton v. United States,* No. 08 C 4485, 2010 WL 3397349 (N.D. Ill. Aug. 23, 2010) (finding Plaintiff's incapacitation argument, among others, did not "justify equitable tolling as they don't establish the requisite due diligence or extraordinary circumstances preventing Plaintiff from filing his [FTCA] claim in a timely fashion"); *Robison v. Hinkle*, 610 F.Supp.2d 533, 539-40 (E.D. Va. 2009) ("In addition to proving that a petitioner suffered from a qualifying mental incapacity or incompetency, a petition must also demonstrate this condition prevented him from filing a timely petition.").

While a determination whether equitable tolling is appropriate is a mixed question of law and fact, here the court is able to determine equitable tolling does not apply as a matter of law. *See, e.g., Niehoff v. Maynard*, 299 F.3d 41, 47 (1st Cir. 2002); *Desir v. Steward Health Care Sys., LLC*, 109 F. Supp. 3d 401, 406 (D. Mass. 2015). There are no complaint allegations supporting equitable tolling and no showing of extraordinary circumstances preventing Plaintiff from filing her administrative claim until June 14, 2016.

### c. Continuous Treatment Doctrine

As in its earlier motion, the United States argues the continuous treatment doctrine does not apply because providers at NCFMC were not providing care related to her Crohn's disease

after the amputations, and therefore the care was not for the "same illness or injury out of which the claim for medical malpractice arose." *See* ECF No. 123-1 at 16; *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987). Further, it argues the post-amputation treatment was not provided by the same physician or physician's assistant at NCFMC as the alleged missed diagnosis. ECF No. 123-1 at 16.[5]

Plaintiff contends the continuous treatment doctrine does apply, because she continued receiving treatment at NCFMC by the same physician and for the same condition that led to her hospitalization and injury. ECF No. 133 at 18-20. Consequently, Plaintiff argues, the statute of limitations did not accrue until 2016, when her treatment ceased. *Id.* at 20. In reply, the United States argues the court should not apply the doctrine because treatment was not for the same problem by the same doctor. ECF No. 141 at 14.

Under the continuous treatment doctrine, "the patient is excused from challenging the quality of care being rendered until the confidential relationship terminates. Stated another way, the doctrine permits a wronged patient to benefit from his physician's corrective efforts without the disruption of a malpractice action." *Otto*, 815 F.2d at 988. Application of this doctrine is only permitted "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." *Miller v. United States*,

---

[5] The United States also argues this doctrine is based on the "continuous tort doctrine," which requires continuing acts of negligence so that each visit with the doctor is independently tortious. ECF No. 123-1 at 16 (citing *Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984); *Miller v. United States*, 932 F.2d 301 (4th Cir. 1991). However, *Miller* did not require continuing acts of negligence, but only held later acts of negligence had nothing to do with the specific "failure to diagnose" claim in that case. *Miller*, 932 F.2d at 305.

932 F.2d 301, 305 (4th Cir. 1991). "In such circumstances, the claim only accrues when the continuous treatment ceases." *Id.* at 304.

Although Plaintiff continued to be treated at NCFMC for issues related to her hospitalization and amputations, there has been no showing she was seen at NCFMC for ongoing treatment of her Crohn's disease in an effort to "correct the injury." *Clutter-Johnson v. United States*, 714 F. App'x 205 (4th Cir. 2017) (continuous treatment doctrine did not apply to plaintiff's wrongful birth claim when plaintiff continued to receive medical treatment related to her pregnancy from the provider who allegedly misplaced an IUD, because the medical treatment was not to "correct her injury"); *Cole v. Principi*, No. 1:02-cv-0790, 2004 WL 878259 (M.D.N.C. April 4, 2004) (treatments after injury did not constitute a "physician's corrective efforts, but they were merely efforts to help Plaintiff cope with the permanent injury. As such, these efforts are outside the scope of the continuous treatment doctrine."). Even though Plaintiff's amputations were a result of the alleged failure to diagnose and/or treat Crohn's disease, treatment at NCFMC after the amputations was not for Crohn's. *Otto*, 815 F.2d at 988. Therefore, the continuous treatment doctrine does not apply.

## CONCLUSION

For the reasons set forth above, the United States' motion for summary judgment based on statute of limitations (ECF No. 123) is denied. Should the United States wish to pursue the issue further, it may be presented to the jury at trial. The jury will be asked to determine whether the United States has shown, by a preponderance of evidence, that Plaintiff knew, or in the exercise of due diligence should have known, of both the existence and cause of her injury prior to June 14, 2014. Evidence of Plaintiff's condition during the period prior to June 14, 2014, may be

considered by the jury on this issue. However, Plaintiff will be unable to argue that Plaintiff's condition entitled her to extension of the limitations period beyond the two year period from accrual. Likewise, Plaintiff may not rely on the continuous treatment doctrine to extend the accrual date.

IT IS SO ORDERED.

s/Cameron McGowan Currie
CAMERON McGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 29, 2018