IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Zekiya Knox, | C/A No. 0:17-cv-36-CMC |
| Plaintiff, | |
| v. | |
| The United States of America; Amisub of SC, Inc., d/b/a Piedmont Medical Center; South Carolina Emergency Physicians; Jeffrey Warden, MD; Brian Fleet, PA; Piedmont General Surgery Associates, LLC; Alex Espinal, MD; Bret Garretson, MD; and Digestive Disease Associates, | Opinion and Order Denying Defendant United States' Motion for Partial Summary Judgment on Damages (ECF No. 120) |
| Defendants. | |

Through this action, Zekiya Knox ("Plaintiff") seeks recovery for alleged medical malpractice by a variety of medical providers involved in her care between September 2013 and May 2014.[1] Plaintiff alleges these providers failed to properly and timely diagnose and treat her underlying condition, Crohn's disease, and that this failure led to the development of sepsis. Plaintiff further alleges various Defendants failed to properly treat her sepsis and that the collective errors led to Plaintiff's loss of three limbs. Plaintiff asserts a single claim for medical negligence

---

[1] Plaintiff alleges errors by each of the following Defendants: (1) her primary care provider, North Central Family Medical Clinic ("NCFMC"), for which the United States of America ("United States") is substituted as the Defendant; (2) the hospital at which she received emergency and other treatment, Amisub of S.C., Inc., d/b/a Piedmont Medical Center ("Piedmont"); (3) Piedmont emergency department medical providers Dr. Jeffrey Warden ("Dr. Warden"), Brian Fleet, PA ("Fleet"), and their employer South Carolina Emergency Physicians, LLP ("SCEP"); (4) her surgeon, Alex Espinal, MD ("Dr. Espinal"), and his employer, Piedmont General Surgery Associates, LLC; and (5) her gastroenterologist, Bret Garretson, MD ("Dr. Garretson"), and his employer Digestive Disease Associates. *See* ECF No. 88 (Second Amended Complaint).

against all Defendants, though the specifically alleged errors vary between Defendants. *See* ECF No. 88 (Second Amended Complaint).

The matter is before the court on motion of Defendant United States' for partial summary judgment on the issue of damages. ECF No. 120. The United States argues a damages limitation applies because NCFMC is a tax-exempt charitable organization providing medical care to underserved patient populations, and under South Carolina law, liability of a private charitable organization is capped at $1.2 million when physicians are involved in the alleged tort. ECF No. 120-1. Plaintiff agrees the United States is entitled to a limitation of damages, but argues there were multiple different occurrences of negligence and therefore the United States' exposure exceeds $1.2 million. ECF No. 132. In reply, the United States argues there were not multiple instances of negligence and the $1.2 million damage cap applies. ECF No. 138. For reasons set forth below, the motion is denied as the court is unable to find as a matter of law there was only one occurrence of negligence.

## COMPLAINT ALLEGATIONS

Plaintiff alleges injury after abdominal pain, which she alleges was never properly treated, developed into "significant damage to her intestines and caused a life threatening infection," sepsis. ECF No. 88, Sec. Am. Compl. ¶ 37. Plaintiff originally presented to the Piedmont Emergency Room ("Piedmont ER") on September 13, 2013, complaining of persistent abdominal pain. *Id.* at ¶ 9. She was seen by Defendant Dr. Warden, who performed a physical examination and ordered lab testing, ultrasound of the lower abdomen, and CT scan. *Id.* at ¶¶ 9-11. Plaintiff was discharged from the ER with narcotic pain killers and an instruction to follow up with a gastroenterologist. *Id.* at ¶ 14. On September 19, 2013, Plaintiff was seen by Defendant Dr. Garretson, a gastroenterologist, who scheduled and conducted a colonoscopy on September 25,

2013.  *Id.* at ¶¶ 15-16.  Dr. Garretson was unsure if his findings represented "appendicitis or IBD" (*id.* at ¶ 16), so he referred Plaintiff to a surgeon, Defendant Dr. Espinal, that same day.  *Id.* at ¶ 17.  Dr. Espinal ruled out acute abdominal process and ordered a CT scan, but Plaintiff alleges she was never informed of that appointment.  *Id.* at ¶¶ 18, 18.1.

The next day, September 26, Plaintiff went to see April Logan, a physician's assistant at NCFMC, a federally funded community health care center, complaining of abdominal pain. *Id.* at ¶ 19.  Ms. Logan ordered an ultrasound, which was performed September 30, 2013 and showed "prominent bowel loops . . .with a somewhat thickened appearance." *Id.* at ¶¶ 19.1, 20.  Ms. Logan took no action in response to this finding.  *Id.* at ¶ 20.  Plaintiff was next seen by Ms. Logan on January 14, 2014, for abdominal pain.  *Id.* at ¶ 24.  Ms. Logan referred Plaintiff back to Dr. Espinal, who saw Plaintiff in February 2014.[2]  Plaintiff was prescribed prednisone at that appointment and "the records reflect there was to be an appointment scheduled with Dr. Garretson, [but] this was never made known to Ms. Knox."  *Id.* at ¶ 26.

On March 21, 2014, Plaintiff returned to NCFMC complaining of abdominal pain. *Id.* at ¶ 28. The physician she saw ordered another ultrasound, which was performed on April 4, 2014, and "noted tubular structures and encouraged a CT scan." *Id.* at ¶¶ 29, 30.  Plaintiff was to follow up at NCFMC on April 14 for ultrasound results, but instead returned to the Piedmont ER by ambulance that day.  *Id.* at ¶ 31. Tests and examination showed an elevated white count, lower

---

[2] The visit to Dr. Espinal in February 2014 appears to have been prompted by a series of telephone communications between NCFMC and Plaintiff's mother.  *See* ECF No. 121-6 at 16, 17 (summary of phone messages and conversations).  The first contact was apparently initiated by Ms. Logan in January 2014 after she reviewed Plaintiff's September 2013 colonoscopy results and, ultimately, led to a request by Plaintiff's mother for a referral to a surgeon to have Plaintiff's appendix removed.  *Id.*

quadrant pain, and "what was then believed to be bacteria in her urine." *Id.* at ¶ 32. Dr. Warden "remarked her presentation was similar to her presentation in September," and accessed those records, but the only treatment rendered was a prescription for an antibiotic for a urinary tract infection. *Id.* at ¶¶ 33-34. Defendant Fleet, a physician's assistant in the ER, ordered an additional antibiotic after reviewing results of a vaginal culture on April 18, 2014. *Id.* at ¶ 36.

On May 4, 2014, Plaintiff returned to the Piedmont ER. *Id.* at ¶ 37. She was diagnosed with "either an infected inflamed appendix or a flare up of IBD that was never properly discovered or treated." *Id.* She went into septic shock and ultimately lost three limbs. *Id.* at ¶ 39.

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

The Federal Tort Claims Act waives the sovereign immunity of the United States for civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "The United States shall be liable, respecting the provisions of this title

relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674.

The South Carolina Solicitation of Charitable Funds Act ("CFA") limits liability for injury caused by an employee of a charitable organization to "an amount not exceeding the limitations on liability imposed in the South Carolina Tort Claims Act in Chapter 78 of Title 15." S.C. Code § 33-56-180(A).[3] The South Carolina Tort Claims Act ("SCTCA") states

> (a) For any action or claim for damages brought under the provisions of this chapter, the liability shall not exceed the following limits:
>
> (1) Except as provided in Section 15-78-120(a)(3), no person shall recover in any action or claim brought hereunder a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.
>
> (2) Except as provided in Section 15-78-120(a)(4), the total sum recovered hereunder arising out of a single occurrence shall not exceed six hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.
>
> (3) No person may recover in any action or claim brought hereunder against any governmental entity and caused by the tort of any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, a sum exceeding one million two hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.
>
> (4) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million two hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

---

[3] The CFA also states "[a] judgment against an employee of a charitable organization may not be returned unless a specific finding is made that the employee acted in a reckless, willful, or grossly negligent manner." *Id.* The United States does not allege Plaintiff must prove gross negligence, recklessness, or willfulness on the part of the NCFMC providers, likely because the providers were not sued individually and therefore a verdict against the United States would not be "against an employee" of NCFMC.

S.C. Code Ann. § 15-78-120(a)(1-4). As defined in the SCTCA, "'occurrence' means an unfolding sequence of events which proximately flow from *a single act of negligence*." § 15-78-30(g) (emphasis added).

"All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and the language used must be construed in the light of the intended purpose of the statute." *Eagle Container Co., LLC v. County of Newberry,* 666 S.E.2d 892, 895 (S.C. 2008). "Legislative intent is best determined by examining the language of the statute itself." *Doe v. American Red Cross Blood Svcs*., 377 S.E.2d 323, 437 (S.C. 1989). The legislative intent of the CFA is to "encourage the formation of charitable organizations, to promote charitable donations, and to preserve the resources of the charitable organization." *Id.*; *see also Simmons v. Toumey Regional Medical Ctr.*, 533 S.E.2d 312, 316 (S.C. 2000) ("[A] charitable institution should devote its resources to the endeavor at hand and the greater good, not to reimbursing individuals injured by the institution's negligent acts.").

Defendant United States argues it should be granted partial summary judgment on the issue of damages because the CFA limits damages against it as it assumed liability for NCFMC, "a federally funded community health center that is a tax-exempt charitable organization providing medical care to underserved patient populations." ECF No. 120-1. Plaintiff concedes the United States "is entitled to a limitation of damages and does not oppose this position," but contends there were multiple occurrences of negligence by NCFMC providers and therefore the United States' liability exceeds the damages cap of $1.2 million per occurrence. ECF No. 132. In reply, the United States argues allowing recovery to the damage cap for each alleged deviation from the standard of care would "completely eviscerate the CFA and the legislative intent to limit damages applicable to charitable organizations." ECF No. 138 at 6.

Plaintiff agrees the cap on damages in the SCTCA applies to this action through the CFA. Therefore, the only question is whether Plaintiff has alleged multiple "occurrences" of negligence so as to preclude summary judgment for the United States on this issue.

### a. Multiple occurrences

Plaintiff argues different providers at NCFMC breached the "legal duty to coordinate her care" at different points in the time period between September 2013 and May 2014. ECF No. 132 at 10. She alleges negligence by April Logan, a physician's assistant[4], on September 26, 2013 for "failing to review pertinent medical records" from NCFMC visits and appointments with the gastroenterologist and general surgeon and on January 14, 2014, for failing to conduct an abdominal exam or review Plaintiff's chart; by Dr. Chua for "concluding Ms. Knox needed a gastroenterology consult but failing to follow up"; and by Dr. West who "heard Ms. Knox complain of abdominal pain but did not investigate it at all either through an exam or a review of her now extensive medical records for the same complaint." *Id.* (citing ECF No. 88, Sec. Am. Compl.). While Plaintiff does not suggest each alleged breach of the standard of care constitutes a separate occurrence, she contends the manner in which each NCFMC provider separately erred was a distinct act of negligence and thus an "occurrence" ("i.e. failure to examine v. failure to read chart v. failure to communicate with specialist"). *Id.* at 11. In support of these allegations, Plaintiff cites the expert report and deposition testimony of Dr. Carol Ann Rupe. ECF Nos. 132-7 (Rupe dep. excerpts), 132-8 (Rupe Report). Therefore, Plaintiff argues she has met her burden for purposes of defeating summary judgment. *Id.*

---

[4] As Ms. Logan is a physician's assistant, not a "licensed physician," damages available for her alleged negligent acts are limited to $300,000 per occurrence.

The South Carolina Supreme Court had occasion to consider the CFA's definition of "occurrence" in *Chastain v. AnMed Health Foundation*, 694 S.E.2d 541 (S.C. 2010). In *Chastain*, a plainitff sued a charitable institution and six nurses who cared for her during her hospitalization for circulation problems. She alleged that over 2000 deviations from the standard of care led to amputation of her leg. The trial judge reduced a jury verdict to $300,000 finding "the intent of the CFA was to limit the amount of damages recoverable from a charitable organization, and to read the term 'occurrence' to include every incident where the defendant nurses violated the applicable standard of care would clearly defeat the legislature's intent…." *Id.* at 543. Alternatively, the trial judge held it was impossible to determine the number of negligent acts or negligent nurses found by the jury based on the jury charge and verdict form, and therefore only one recovery was appropriate. *Id.*

On appeal, the Supreme Court held the plaintiff failed to meet her burden of proving multiple occurrences because the jury was not asked to determine whether there was more than one occurrence, and the general verdict form only supported a single occurrence.[5] Therefore, the court found it unnecessary to address the trial judge's finding the term "occurrence" could not be read to include every incident where the nurses violated the applicable standard of care. *Id.* Instead, the court held "[i]f [plaintiff] alleges multiple occurrences, that is, that there was more than one single act of negligence from which proximately flowed an unfolding sequence of events, she bears the burden of proving each occurrence." *Id.* at 543-44.

_____

[5] The court noted the jury was never instructed on the definition of occurrence, or asked to determine whether there was more than one occurrence, so the trial judge was correct in "reforming the verdict to reflect a single occurrence." *Id.* at 544.

This court agrees with the United States "occurrence" most likely could not be read to include every violation of the standard of care. However, that is not Plaintiff's position here – Plaintiff argues she has alleged separate acts of negligence by independent actors at NCFMC, not merely multiple breaches of the standard of care.

Plaintiff cites an SCTCA case, *Boiter v. South Carolina Dept. of Transp.*, for the proposition that multiple acts of negligence constitute separate occurrences under that statute. 712 S.E.2d 401 (S.C. 2011). However, *Boiter* is distinguishable on two distinct and important points: first, it does not address the CFA and the legislative intent of that statute to limit liability; and second, it discussed liability for two acts of negligence by entirely separate entities[6] with no causal connection between the two. *Id.* at 406 (distinguishing from *Chastain* on the facts and from cases in other jurisdictions "because they involve a single governmental entity which committed multiple acts of negligence" and deciding there were two occurrences "based solely on the peculiar facts of this case"). As the instant case is factually distinguishable from *Boiter*, that case does not compel a finding of multiple occurrences.

Additionally, Plaintiff cites a South Carolina circuit court case finding two occurrences under the SCTCA when two physicians working at the same facility examined a woman during childbirth and committed two separate acts of negligence in failing to timely deliver her baby. *Williamson v. South Carolina Ins. Reserve Fund*, No. 2000-CP-42-841, 2001 WL 35835128 (S.C. Com.Pl. May 8, 2001). However, on appeal, the South Carolina Supreme Court found the damages

---

[6] The court did not make its decision solely on the basis of negligence by two separate departments, noting "[i]n many situations, negligent acts from more than one entity would still equal but one occurrence." *Id.* at 407. However, the number of actors is not the only difference between the instant case and *Boiter*.

cap inapplicable as it was not in effect at the time the plaintiff's claim accrued. 586 S.E.2d 115, 118 (S.C. 2003). The court explicitly declined to address the issue of number of occurrences as unnecessary because the cap did not apply. *Id.*

In this case, Plaintiff has alleged instances of distinct types of negligence by providers at NCFMC. She alleges, and includes expert testimony in support, that Ms. Logan failed to review the chart *in toto* in September 2013 and failed to perform an abdominal examination in January 2014, and that Dr. West failed to review the chart, perform an examination, and to contact the gastroenterologist or surgeon in March and April 2014.[7] She contends these separate acts of negligence took place on different dates and were unrelated to one another, and therefore Plaintiff's injury was not due to "an unfolding sequence of events which proximately flow from a single act of negligence."

The South Carolina Supreme Court has held in *Chastain* that a plaintiff who alleges multiple occurrences, that is, there was more than one single act of negligence from which proximately flowed an unfolding sequence of events, bears the burden of proving each occurrence. 694 S.E.2d at 543-44. This court is unable to find as a matter of law there was a single act of negligence here. If Plaintiff presents evidence at trial to support more than one act of negligence, the jury will be instructed on the definition of occurrence and asked to determine whether Plaintiff

---

[7] Plaintiff also alleges "a different NCFMC physician (Dr. Chua) [was at fault] for concluding Ms. Knox needed a gastroenterology consult but failing to follow up," in the time period after February 2014. ECF No. 132 at 10 (citing Sec. Am. Compl. ¶ 28). Dr. Rupe's report states Dr. Tafari received and signed off on Dr. Garretson's notes in September 2013, but does not discuss Dr. Chua. The report also notes "[w]hile the providers were in the chart, that [sic] again failed to check their own records to find the consults from the gastroenterologist. If they had, they would and should have followed up with the gastroenterologist to determine the diagnosis." The excerpts of Dr. Rupe's deposition filed with the briefing of this motion do not discuss Dr. Chua.

has proven more than one occurrence. If only Ms. Logan is found to be negligent, the United States' liability would be limited to $300,000 for one occurrence or $600,000 for two occurrences. If either Dr. West or Dr. Chua is found to be negligent, but not Ms. Logan, recovery would be capped at $1.2 million for one occurrence, or $2.4 million for two. It appears the maximum potential recovery by Plaintiff from the United States is $3 million: $1.2 million for each physician's alleged negligent actions for a total of $2.4 million, plus $600,000 to encompass both alleged negligent acts by Ms. Logan.

## CONCLUSION

For the reasons set forth above, Defendant United States' motion for summary judgment on the issue of damages (ECF No. 120) is denied.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 3, 2018