IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Zekiya Knox,<br><br>  Plaintiff,<br><br> v.<br><br>The United States of America;<br>Amisub of SC, Inc., d/b/a Piedmont Medical Center; South Carolina Emergency Physicians, LLC; Jeffrey Warden, MD; Brian Fleet, PA; Piedmont General Surgery Associates, LLC; Alex Espinal, MD; Bret Garretson, MD; and Digestive Disease Associates,<br><br>  Defendants. | C/A No. 0:17-cv-36-CMC<br><br><br>**Opinion and Order on<br>Plaintiff's Motion to Alter or Amend<br>Partial Grant of Summary Judgment**<br><br><br>**(ECF No. 174)** |

  Through this action, Zekiya Knox ("Plaintiff") seeks recovery for alleged medical malpractice by a variety of medical providers involved in her care from September 2013 through May 2014, including Amisub of SC, Inc., d/b/a Piedmont Medical Center ("Piedmont"). Plaintiff's claims against Piedmont focus on her hospitalization and surgery at Piedmont in early May 2014. Most critically for present purposes, Plaintiff alleges she was injured as a result of mismanagement of vasopressors, including administration of Levophed by her anesthesiologist, Dr. Start, during her May 5, 2014 surgery.[1]

  Piedmont previously moved to exclude testimony from one of Plaintiff's experts, Paul Marik, MD ("Dr. Marik") and for summary judgment. The court denied the motion to exclude but granted the motion for summary judgment in part. ECF No. 162. As it relates to the present

---

[1] A detailed explanation of Plaintiff's claims is included in the Opinion and Order that is the subject of Plaintiff's present motion. *See* ECF No. 162 ("Opinion and Order on Motions by [Piedmont] to Exclude Expert Testimony and for Summary Judgment (ECF Nos. 124, 125)").

motion, the court held "S.C. Code Ann. § 15-32-230 applies to the anesthesiologist's actions during Plaintiff's May 5, 2014 surgery and Plaintiff has failed to proffer evidence to satisfy the gross negligence standard imposed by that statute." ECF No. 162 at 2.

The matter is before the court on Plaintiff's motion to alter or amend ECF No. 162 ("Challenged Order") to the extent it grants partial summary judgment. Plaintiff does not challenge the ruling Section 15-32-230 applies to Dr. Start's actions. She, instead, argues the court "overlooked key evidence when determining Plaintiff failed to produce sufficient evidence to show Dr. Start provided grossly negligent medical care during the surgery." ECF No. 174 at 1. Plaintiff asserts "the record suggests Dr. Start's conduct during the surgery defied 'logical reason[,]'" which she argues is sufficient to support a finding of gross negligence. *Id.* For reasons set forth below, Plaintiff's motion is denied.

**STANDARD**

Reconsideration of interlocutory orders is governed by Rule 54(b) of the Federal Rules of Civil Procedure. *See U.S. Tobacco Coop. Inc. v. Big South Wholesale of Virginia LLC*, __ F.3d __, 2018 WL 3677555 (4th Cir. 2018); *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms*, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003). Under Rule 54(b), "any order or other decision, however designated, . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Am. Canoe Ass'n*, 326 F.3d at 514-15. Thus, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment *when such is warranted.*" *Id.* (noting reconsideration under Rule 54(b) is "committed to the discretion of the district court" with the goal of "reach[ing] the correct judgment under law.") (emphasis added).

"Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) . . . , Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson*, 856 F.3d at 325. Nevertheless, the discretion afforded by Rule 54(b) "is not limitless," and we "have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *U.S. Tobacco*, 2018 WL 3677555 at *14 (quoting *Carlson*, 856 F.3d at 325 (internal marks omitted)). This is because, while Rule 54(b) "gives a district court discretion to revisit earlier rulings in the same case," such discretion is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted)).

"Accordingly, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* (quoting *Carlson*, 856 F.3d at 325 (internal quotation marks and alteration omitted)). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id.*

## DISCUSSION

Plaintiff's motion relies on two excerpts from Dr. Marik's deposition. ECF No. 174 at 3 (citing Dr, Marik dep. 56: 5-22 ("First Excerpt"), 110: 6-16 ("Second Excerpt")). Plaintiff argues the First Excerpt supports a finding of gross negligence because it demonstrates "based on the blood pressure readings in Dr. Start's charting, high dose Levophed doses were not just

3

unreasonable, they were illogical." *Id*. She argues the Second Excerpt shows "Dr. Start was similarly culpable for mismanaging Plaintiff's arterial line" because "Dr. Start had objective evidence during the surgery showing the line was not functioning adequately." *Id.* Plaintiff characterizes these excerpts as sufficient to support a finding "Dr. Start's conduct was far worse than mere negligence[.]" *Id*.

Plaintiff's arguments fail because they do not satisfy any of the three bases for alteration or amendment of an interlocutory order. *Infra* Discussion § I. Even if properly raised, the arguments are insufficient to alter or amend the Challenged Order because the cited excerpts do not support a finding of gross negligence. *Infra* Discussion §§ II, III.

## I. Plaintiff's arguments do not present a proper ground for reconsideration

Plaintiff relies on only one of the three potential grounds for alteration or amendment: "to correct a clear error of law or prevent manifest injustice." ECF No. 174 at 2. She does not, however, point to any error of law. Neither does she explain why the challenged ruling would work a manifest injustice other than by stating the court "overlook[ed] key evidence on the culpability level for Dr. Start's misconduct." *Id.*

The difficulty with this argument is the evidence on which Plaintiff now relies was clearly available to her during briefing on the underlying motion. Despite this, she did not rely on the one excerpt cited in earlier briefing (Dr. Marik dep. 56:5-22) for the point now advanced. *See infra* n.3. The other excerpt on which she now relies (Dr. Marik dep. at 110:6-16) was not cited for any purpose in her prior briefing. *See infra* n.5. Viewed in light of Plaintiff's prior briefing, her current arguments are merely an attempt to make *new arguments* based on *previously available evidence* and without establishing a "good reason . . . to battle for [the court's decision] again." *U.S.*

4

*Tobacco Coop.*, 2018 WL 3677555 at *14. This is not a proper basis for alteration of an interlocutory order.[2]

**II.    The First Excerpt from Dr. Marik's deposition does not warrant alteration**

Plaintiff argues the First Excerpt supports a finding the Levophed dose given by Dr. Start during Plaintiff's surgery was "not just unreasonable, [but] illogical." The First Excerpt reads as follows:

> Q:    So at 2030 [Dr. Start] places the [arterial]-line.
>
> A:    And it's simultaneously that . . . the blood pressure drops – the recorded blood pressure drops significantly, 80 over 60.
>
> And, curiously, if – the pulse rate falls also from 150 to 110, which is a really strange combination because usually if you become hypotensive, you get tachycardic.
>
> But what's really interesting is that at the end of surgery, the heart rate is – the – he records a different blood pressure. So in post anesthesia, the blood pressure is recorded as 91 over 77 with the heart rate of 153. So I – *it's really somewhat perplexing, these vital signs that he's recorded*.
>
> Then he gave the high-dose nor-epi but provides that – *there's no logical reason, looking at this flow chart, to explain why he would do that*.

---

[2]    As noted in the order granting partial summary judgment, Plaintiff previously argued gross negligence could be supported by violation of (1) a statute or regulation, or (2) internal policy or procedure. ECF No. 162 at 17. These sources were unavailing because Plaintiff failed to identify any statute or regulation violated and the two internal policies and procedures cited "relate[d] to standards imposed on and alleged violations by nurses." *Id.* Plaintiff also relied on opinions stated in Dr. Marik's Expert Witness Report, which opined a combination of factors demonstrated "reckless misconduct." *Id.* at 18. This source was unavailing because it addressed only errors by nurses, not errors by a physician. *Id.* Plaintiff does not challenge either aspect of the Challenged Order. Neither does she point to prior arguments the court failed to consider. Rather, she now advances *new arguments* in favor of a finding of gross negligence. *See id.* (noting Plaintiff pointed to no other basis for finding Dr. Start's actions grossly negligent); *id.* n.3 (noting Plaintiff did "not address the arterial line in arguing Dr. Start's actions were grossly negligent").

Dr. Marik dep. at 56: 5-22 (emphasis added). While not included in the lines Plaintiff cites, Dr. Mark continued: "And I think a normal anesthesiologist *would have written some notation as to some explanation to have done this*." *Id.* at 56:23-25 (emphasis added).

This exchange is preceded by a discussion of the method by which Dr. Start recorded blood pressure (manually using a graphic), which Dr. Marik testified is not the method generally used "nowadays." Dr. Marik dep. 55:12-19 (stating "nowadays this is all automated and generated electronically"). Dr. Marik also explains that, at the "start of anesthesia, the heart rate's running around 150 and the blood pressure is 120 over 70. And that goes on for like maybe two hours" before Dr. Start places the [arterial]-line." Dr. Marik dep. 55:20-23.[3]

As noted above, Plaintiff argues this testimony supports a finding Dr. Start's actions amounted to gross negligence because the Levophed dose he gave during surgery was "not just unreasonable, [but] illogical." This takes the clause there was "no logical reason" out of context because the full statement refers to Dr. Marik's inability to determine why the dosing decision was

---

[3] In her memorandum opposing summary judgment, Plaintiff cited this excerpt in support of the following argument:

> Ms. Knox also faults [Piedmont] for the way [Levophed] was adjusted from one dose to another. [Levophed] must be adjusted to attain and maintain a safe blood pressure, but Ms. Knox's *blood pressure readings were not properly documented during her May 2014, surgery* and her nurses failed to realize a blood pressure-measuring device was reporting misleading data. P. Marik Dep. 42:9–45:19; 55:9–56:25.

ECF No 139 at 2 (emphasis added). Thus, as it relates to actions during surgery, this excerpt was cited for the proposition Plaintiff's blood pressure readings *were not properly documented*, not for the premise Dr. Start's dosage decision or other actions during surgery were negligent or grossly negligent.

made due to the absence of an explanation in Dr. Start's handwritten "flow chart" or post-surgical notes. This may suggest a concern as to the adequacy of documentation (during and following an emergent surgery). It may also suggest the need for further inquiry during discovery and development of related expert opinion. The time for such inquiry and development, however, expired prior to briefing on the underlying motion for summary judgment. In sum, while the concern noted in the First Excerpt may have pointed to an area of concern, potentially suggesting the need for further discovery and development, it does not support a finding of gross negligence.[4]

### III. The Second Excerpt from Dr. Marik's deposition does not warrant alteration

The Second Excerpt is found in testimony summarizing Dr. Marik's opinions. It reads, in full, as follows:

> Q: And the anesthesiologist, your criticisms are – assuming it happened – increasing the Levophed to 75 micrograms per minute?
>
> A: That's correct.
>
> Q: Anything else?
>
> A: Well, he should have made sure that the [arterial-]line that he put in was functional.
>
> Q: Okay.
>
> A: I mean, I think he was clear that it was not – it was not functioning adequately, so taking it out and replace it.

---

[4] In reaching this conclusion, the court has not considered Piedmont's first two arguments in opposition to Plaintiff's motion. These arguments focus on the adequacy of causation evidence. *See* ECF No. 175 at 5-9 (Piedmont responsive brief §§ I, II). It is not, therefore, necessary to determine whether these arguments, which appear to seek reconsideration of other aspects of the Challenged Order, may be raised through a memorandum in opposition to another party's motion to alter or amend. *See* ECF No. 162 at 8-10, 11-12 (denying motion to exclude expert testimony and summary judgment based on absence of causation evidence).

Dr. Marik dep. 110:6-16.[5]

Plaintiff cites this testimony for the proposition Dr. Start "did nothing" to "get the accurate blood pressure readings required to properly administer Plaintiff's medications." ECF No. 174 at 4. This mischaracterizes the cited testimony and ignores other uncontroverted evidence. While Dr. Marik opined it "was clear" the arterial line "was not functioning adequately" and should have been "tak[en] out and replace[d,]" he did not suggest Dr. Start "did nothing" to obtain accurate readings of Plaintiff's blood pressure. There is, in contrast, uncontroverted evidence Dr. Start used multiple means during an emergent surgery to monitor Plaintiff's blood pressure including use of ultrasound, a blood pressure cuff, and multiple attempts to place an arterial line. *E.g.*, Start dep. 31:9-17, 44:1-45:2; 61:11-62:11. The Second Excerpt does not, in any event, opine the failure to replace the arterial line under the emergent circumstances presented during Plaintiff's surgery was

---

[5] Plaintiff did not cite this excerpt in her memoranda predating the Challenged Order. She did cite other portions of Dr. Marik's deposition testimony in support of the premise the arterial line was improperly placed. For example, she included the following in a list of alleged errors:

> *Failure to properly place the arterial line during surgery* (P. Marik Dep. 91:12 – 92:17): [Piedmont] medical provider Dr. Robert Start was the anesthesiologist during Ms. Knox's May 2014 surgery and placed an arterial line in Ms. Knox to measure her blood pressure during the procedure. *Dr. Marik testified the arterial line was placed improperly* which contributed to inaccurate blood pressure readings [Piedmont] medical providers used when increasing Ms. Knox's norepinephrine doses to excessive levels. (P. Marik Dep. 53:21 – 54:1).

ECF No. 139 at 5 (also listing nurses' subsequent failure to recognize or correct problems with the arterial line as contributing to Plaintiff's injuries) (emphasis added). *While the cited pages opine the arterial line was improperly placed, they do not suggest the alleged errors in placement were the result of gross negligence,* particularly under the emergent circumstances presented. *See*, *e.g.*, Dr. Marik dep. 91-92 (testifying arterial lines are "flimsy" and "highly vulnerable to be[ing] twisted and kinked and turned and obstructed").

8

grossly negligent or suggest a causative link between the alleged defective placement and dosing decisions.

## CONCLUSION

For reasons set forth above, Plaintiff's motion to alter or amend the Challenged Order is denied.

IT IS SO ORDERED.

s/Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
August 23, 2018